LEPAN v. MacKINNON BOILER & MACHINE CO.

1. EVIDENCE—OPINION TESTIMONY—DISCHARGE OF SERVANT.
    Expert testimony that an apprentice was not faithfully and honestly working for his master for some time previous to his discharge, offered by defendant's superintendent, who stated that he could determine from experience and observation, whether employees were so working, was improperly excluded, in assumpsit for the wrongful discharge of the apprentice.

2. SAME—APPRENTICES—BREACH OF CONTRACT.
    In answer to plaintiff's claim that he was wrongfully put to work about the shop outside his line of work, it was competent to show that it was customary for apprentices to do other than their regular work when there was no regular work to do, and that they became acquainted in this way with various kinds of work about the shop, and it was beneficial to them.

3. CONTRACTS—APPRENTICES—BREACH BY DISCHARGE.
    Defendant, in an action for breach of a contract of apprenticeship, was entitled to have the claim of defense that if plaintiff, after being refused a raise in wages, wilfully slighted and neglected his work in order to force defendant to discharge him, he could not recover, as requested in writing, presented to the jury in the charge.

4. SAME—MASTER AND SERVANT—DISCHARGE.

    The contract of apprenticeship bound both parties equally, and the apprentice had no right to demand higher wages or to exhibit resentment at the master's refusal to grant his request.

5. SAME—CONSTRUCTION—SERVICES—DAMAGES.

    Where plaintiff's contract of apprenticeship provided that in consideration of faithful performance of the agreement during its full term the master agreed to pay the apprentice ten cents per day for each full working day of nine hours that he actually worked, the arrangement constituted a bonus for complete performance, and no recovery could be permitted therefor.

Error to Bay; Collins, J. Submitted April 29, 1913. (Docket No. 33.) Decided December 20, 1913.

Assumpsit in justice's court by Leo Lepan against the MacKinnon Boiler & Machine Company for breach of a contract of apprenticeship. Judgment for plaintiff on appeal to circuit court. Defendant brings error. Reversed.

*Kinnane, Pratt & Allison,* for appellant.

*Edward E. Anneke* and *William B. Henry,* for appellee.

MCALVAY, J. Plaintiff, a minor, on January 25, 1909, entered into a certain contract of apprenticeship, in writing, to the defendant, to learn the trade of a molder, which was duly ratified and consented to by his father. These articles of apprenticeship were upon the usual terms, and were to continue for the term of four years, and contained, among other provisions, the following which are material in this case:

"During all of which time the said Leo Lepan doth promise and covenant, that he will serve his employers faithfully, keep their secrets, and obey their lawful commands. That he will do them no damage himself nor see it done by others without giving notice

thereof. That he will not waste their goods nor lend them unlawfully. That he will not absent himself without leave, but in all ways behave himself as a faithful apprentice should do during the said term, and that he will make up for all lost time during said term of four years.

"At any time that the said apprentice does not fulfill the above requirements, it is understood and agreed that the said MacKinnon Boiler & Machine Company reserve the right to discharge said apprentice.

"And the said MacKinnon Boiler & Machine Company, covenant and agree to instruct or cause to be instructed the said apprentice, in the trade of molder, and to pay him the sum of 5 5/9c per hour during the first year; 10c per hour during the second year, 12 7/9c per hour during the third year and 15 5/9c per hour during the fourth year.

"Furthermore, in consideration of the faithful performance of the full apprenticeship term of four years, the said MacKinnon Boiler & Machine Company also agree to pay said Leo Lepan, the sum of 10c per day, for each full working day of nine hours, actually performed."

He was discharged November 25, 1910, and the dispute in this case is as to whether he was rightfully discharged. This case was begun in justice's court, where the pleadings on both sides were oral, except a bill of particulars furnished by plaintiff. As recited in the record:

"Plaintiff declared orally against the defendant on all the common counts in assumpsit, and especially for damages caused by breach of a certain contract of apprenticeship between the parties, claiming damages in the sum of $300, and files bill of particulars, in writing, as follows:"

The bill of particulars was for eight weeks' wages from the date of his discharge to January 14, 1911, at 90 cents per day, which amounted to $43.20, and "ten cents per day for 620 days, as per contract—$62.00." Defendant pleaded orally the general issue, and gave

notice that it would show a breach of said apprentice-
ship contract by plaintiff. It was appealed to the cir-
cuit court, where plaintiff recovered a judgment upon
the verdict of a jury.

The errors assigned and relied upon in the case,
which is here for review upon a writ of error, relate
to rulings of the court upon the admission and exclu-
sion of testimony, the refusal to give certain requests
of defendant, and upon certain portions of the charge
as given.

The defense in the case was based on the right,
under the contract, to discharge this apprentice in
case of any failure to perform the agreement on his
part, and the claim is made by defendant, which is
not denied, that about three months before his dis-
charge plaintiff went to the president of the defend-
ant company and asked for an increase of wages,
which was refused, and he was told that he was
bound by the contract, which fixed the wages. De-
fendant claimed and introduced evidence tending to
show that after this time a change in his conduct took
place, and he neglected his work, idled his time away,
and did very poor and indifferent work, to which con-
duct his attention was frequently .called; that finally,
when his attention was called on the day of his dis-
charge, to some poor castings he had made, he was
told that if such a thing happened again he would be
discharged, when he answered he did not care, and
the discharge immediately followed. On the part of
plaintiff testimony was introduced tending to con-
tradict the claim that he neglected his work after he
asked for more wages, and that he was not found
fault with on that account.

The errors relied upon will be considered and dis-
cussed in the order presented in appellant's brief.

The first of these refer to the admission and ex-
clusion of testimony. During the examination of the

general superintendent, after qualifying himself as an expert, he stated on redirect examination:

"I can tell from my experience in going through the shop as to whether men are faithfully and honestly working or not.

"Q. What is the fact during the last three months, as to whether plaintiff here, Mr. Lepan, was faithfully working for the company, or was soldiering and not working?

"*Mr. Anneke:* I object to that. I think it should be specific what he did and did not do.

"*A.* His work was not satisfactory.

"*The Court:* I think the question may be answered.

"Q. The question is, What is the fact as to whether he was honestly and faithfully working or not?

"*A.* He was not; no, sir.

"Q. With reference to the duties of a foreman, you have been a foreman in this shop?

"*A.* Yes, sir.

"Q. The size of that molding room is about what?

"*The Court:* That statement as to whether he was honestly and faithfully working, that is too general and too broad; that is stricken out."

An exception was taken, upon which error is assigned.

This witness was competent as an expert to testify upon this subject, as the record shows, and in the above quotation had stated that from his experience in going through the shop he could tell whether men were faithfully and honestly working or not. In this instance he testified as to facts within his knowledge from observation of this plaintiff, and it was not a mere expression of opinion. The testimony was very material upon the principal dispute involved in the case as to whether the discharge of plaintiff was justified. The court erred in striking out the testimony.

The foreman of the foundry, who had testified at length as to the conduct of plaintiff, both before and after he had asked for higher wages, and the char-

acter of his work during the same time, and who was acquainted with the poor work he had put out, which was broken up and thrown into scrap, among other things, said:

"It is always customary wherever I have worked in my life for an apprentice boy when there was not anything in the shop to go out and do anything until we got something to do."

He was then asked:

"*Q.* What is the benefit derived by the boy from working at all of the different work there?
"*A.* It benefits him—
"*Mr. Anneke:* I object to that as incompetent and immaterial."

This objection was sustained and an exception taken.

Plaintiff had testified and introduced evidence tending to show that he had been wrongfully put at work about the shop not in the line of his employment, while he worked as an apprentice. This question above quoted, which was excluded, was offered by defendant to show the benefit of such custom to the apprentice in becoming acquainted with the various kinds of work about the shop, and to meet the claim that he was not properly treated in that respect. Plaintiff testified that he was treated the same as the rest of the men; that when there was no regular work about the shop to be done they were all put at other work, and it appears that such instances were not frequent, and the time spent at such work was very limited. The testimony should have been admitted.

The other questions upon the exclusion of evidence do not, in our opinion, require consideration, as we are satisfied in regard to them no reversible error was committed.

It is contended that the court was in error in re-

fusing to give some of the requests to charge pre-
ferred by defendant. The first of these requests we
find was in fact given.

The next was as follows:

"Of course, if you find that plaintiff, after he was
refused a raise of wages by defendant, wilfully neg-
lected and slighted his work for the purpose of forc-
ing the defendant to discharge him, then he cannot
recover."

There was evidence in the case on the part of de-
fendant tending to show that after plaintiff asked for
higher wages he became indifferent and careless in
his work, and also tending to show that by such
course of conduct he intended to compel the defend-
ant to discharge him. This request covered this
theory of the defense, and was based upon evidence
in the case. Defendant was entitled to have his
theory of the case presented to the jury, and the re-
quest was a proper one, which should have been
given. The court was in error in refusing it.

The following request was also refused by the
court:

"The plaintiff was bound by the terms of said con-
tract to the same extent as the defendant and plain-
tiff had no right to demand more wages than the
contract provided, and had no right to resent the
action of the defendant in refusing to give him higher
wages, if you find that he did resent it."

This request also embodied the theory of the de-
fendant's case in two respects: *First*, that both
parties were alike bound by the terms of this con-
tract, which they had entered into, and that the con-
tract fixed the wages plaintiff agreed to receive, and
he had no right to demand more wages than the con-
tract provided for; *second*, that he had no right to
resent the refusal of the increase of wages, which was
a fact to be found by the jury. This request to charge
should have been given.

The following portions of the charge given by the court are objected to as erroneous:

"The situation was this: Either party had a right to ask for something more than the contract gave him, and the other party had a right to refuse, and that should have ended it."

Also:

"That plaintiff, if he thought he ought to have more money, had a right to ask for more money, and the defendant then had a right to say, 'There is your contract, and I go by that contract.'"

The above excerpts from the charge cannot be harmonized with the request last quoted. This request states the law which binds the parties to a written contract of employment, and should have been given. The court was in error in stating that the plaintiff, "if he thought he ought to have more money, had a right to ask for more money," and following that by saying, "The defendant had a right to say he relied upon the contract" does not cure this error in the charge. In this charge the court was construing this contract and the rights of the parties under it. Neither party to the contract had any right to demand more than was provided in that contract, and the court should have so stated in effect. The use of the word "right" in the charge quoted was unfortunate. The court was dealing with the strict rights of the parties to this agreement, and the charge as given was erroneous and confusing to the jury.

The last error relied upon relates to the charge of the court upon the question of damages and the construction which the court gave to the clause in the contract providing for a bonus of 10 cents per day. This paragraph of the contract reads:

"Furthermore, in consideration of the faithful performance of the full apprenticeship term of four years, the said MacKinnon Boiler & Machine Company agrees to pay said Leo Lepan the sum of ten

cents per day for each full working day of nine hours actually performed."

The court charged the jury at considerable length upon this matter, as follows:

"The plaintiff claims this 10 cents per day for the time stated, that is, up to the time the suit was brought. Now if the plaintiff was rightfully discharged, if defendant had a right to discharge the plaintiff, nothing can be recovered on that point. If, on the other hand, the plaintiff was wrongfully discharged, I am of the opinion that this claim is entitled to consideration, and I instruct you upon its allowance, as follows: That amount is at the rate of 10 cents per day for the full four years of the term, and it would amount to $124.80, or thereabouts. But that was a bonus payment, and it was a payment in consideration of the total service of four years to be performed by the plaintiff, and the evidence shows and it stands to reason that the plaintiff's services would be worth much more the latter part of the four years than the first part, and that there would be more equity in the allowance of this bonus for the latter part of the four years than the first part, so I have concluded to charge you as to this question that if the plaintiff was wrongfully discharged you may allow the plaintiff as damages that part of that $124.80 that would be equitable and fair, considering all the circumstances of the case, not to exceed the $62 claimed; and, in considering what would be fair and equitable, you will consider what the plaintiff has lost by reason of not performing that contract, in respect to this 10 cents per day, and also the benefit that would accrue to the plaintiff in having it carried out, the idea being that there is a lump sum to be paid out, which is to be paid for the full four years' service, when the service would be more the latter part of the term than the first part of the term, and this is a claim for the allowance in the first part of the term. Then your allowance would be on that subject what would be reasonable and equitable in view of all the circumstances of the case."

Plaintiff brought this suit to recover certain damages which he claimed to have suffered by reason of

his discharge by defendant. These damages which he claims consisted of two items: One for wages which he would have earned for the term of eight weeks during which he was unable to secure employment; the other, 10 cents per day for 620 days' services rendered to defendant during the term of his apprenticeship. This last item he claims under the last paragraph of the contract. Upon the first item plaintiff was in error as to the number of weeks he was out of employment. The record shows that from November 25, 1910, to January 14, 1911, is exactly seven weeks.

Upon the second item it is strongly urged by defendant that the contract will not warrant a construction that any part thereof could be recovered by plaintiff, for the reason that the agreement which provided for 10 cents per day contemplated a complete performance of the full apprenticeship term of four years, and that the court was in error in submitting the question to the jury. Our construction of this paragraph of the contract is that the 10 cents per day therein provided was not as compensation in the nature of wages, but was a further sum which the master agreed to pay plaintiff as an incentive to complete his apprenticeship as stated by its explicit terms, in consideration of the faithful performance of the full term of apprenticeship by him, and which could not be demanded unless the terms of the provision had been fully performed. The court was in error in charging the jury as last above quoted, and upon that question should have charged as above indicated, and substantially as requested by defendant. This was not a case of suit brought to recover wages already earned and damages for a wrongful discharge by defendant. Plaintiff had been paid in full for all wages earned. He was earning 90 cents a day at the time of his discharge. He found employment at $1.50 a day within seven weeks, and

this loss of time at 90 cents a day is the only item of damages in the case, and depends upon the one question as to whether or not defendant was justified in discharging him.

For the reasons given, judgment is reversed, and a new trial is granted.

STEERE, C. J., and MOORE, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.